# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ERIC CHARLES RODNEY K'NAPP,

        Plaintiff,

    v.

D.G. ADAMS, et. al.,

        Defendants.

_____/

CASE NO. 1:06-cv-01701-LJO-GSA (PC)

FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND CERTAIN DEFENDANTS

(Doc. 16)

I.    **FINDINGS**

    A.    **Procedural History**

       Eric Charles Rodney K'napp ("Plaintiff") is a state prisoner proceeding pro se. The Court granted Plaintiff's motion to proceed in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on November 22, 2006. (Doc. 1.) On December 11, 2006, Plaintiff filed the First Amended Complaint which was screened and dismissed with leave to amend. (Docs. 9, 15.) On November 13, 2008, Plaintiff filed a Second Amended Complaint which is presently before the Court. (Doc. 16.)

    B.    **Screening Requirement**

       The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

1

1  § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

2  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

3  appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. §

4  1915(e)(2)(B)(ii).

5  A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

6  which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in

7  support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding,

8  467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

9  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a

10  complaint under this standard, the court must accept as true the allegations of the complaint in

11  question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the

12  pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.

13  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

14  ### C.   Plaintiff's Second Amended Complaint

15  Plaintiff is a state prisoner, currently housed at Kern Valley State Prison in Delano,

16  California. The acts Plaintiff complains of occurred at California Substance Abuse Treatment

17  Facility and State Prison ("SATF") in Corcoran, California. Plaintiff names thirty-five

18  defendants to wit: CDCR Secretaries Jeanne Woodford and James Tilton; SATF Warden Darrel

19  G. Adams; Inmate Appeals Coordinator Nola Grannis; J. Burleson and T. Surges in the inmate

20  appeals under Grannis; CDCR Inspector General Matthew Cate; SATF Associate Wardens Ken,

21  Clark D. Foulks, L. Hense, S. Sherman, and T. Wan; SATF Appeals Coordinators C.L. Cooper,

22  V.R. Garcia, R. Hall, and E. McCant; Captain D. Cuevas; SATF mail-room workers R. Guerrero,

23  K. Meaders, K. Motty, and Does 1-5; SATF line guards P. Esparza, B. Johnson, A. Larios, and

24  Does 6-10; SATF law library supervisor P. Domen; Sergeants D. L. Henson and C. Pugliese;

25  Lieutenants B. Odle and J.T. Tucker; Captain S. Ortiz; Law Library Supervisor R. Rollins; and

26  Classification Supervisor D. Selvy. Plaintiff delineates three claims against various of the

27  defendants.

28  Plaintiff's first claim is against Defendants Adams, Burleson, Cate, Clark, Cooper, Does

2

1 through 10, Foulks, Garcia, Grannis, Guerrero, Hall, Hense, Meaders, Motty, Ortiz, Pugliese, Sherman, Smith, Surges, Tilton, Wan, and Woodford.  In the title under his first claim, Plaintiff alleges that these defendants "violated at least state law, 42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, and the U.S. Constitution's First and Fourteenth Amendments by causing and/or allowing Plaintiff to suffer a continuous campaign of arbitrary, capricious, retaliatory, and otherwise unlawful deprivations and violations of guaranteed and protected rights relating to mail for no valid reason serving a legitimate penological objective pursuant to and in furtherance of the pervasive custom and/or policy of thus oppressing and otherwise abusing SNY prisoners throughout the CDCR and at SATF as caused and/or allowed by defendants Adams, Cate, Clark, Foulks, Hense, Sherman, Tilton, Wan, and Woodford.  (Doc. 16, pg. 21.)  Under this claim Plaintiff alleges a series of events wherein his outgoing and incoming mail was variously delayed.  (Id., pp. 21-42.)  Plaintiff also alleges that thirty pages of internet generated material were taken from an incoming letter (Id., pg. 36); that his "confidential mail" was opened, read, and delayed (Id., pg. 39); that he only received the May 2005 issue of Prison Legal News (Id., pg. 42) and that the delay of his correspondence variously resulted in rejection of his inmate appeals for untimeliness (Id., pp. 21-42).

Plaintiff's second claim is against Defendants Adams, Cooper, Cuevas, Domen, Esparza, Foulks, Garcia, Grannis, Hall, Henson, Johnson, Larios, Murberger, Odle, Rollins, Selvy, Sherman, Smith, Tilton, Tucker, and Wan.  In the title under his second claim Plaintiff alleges that these defendants "violated at least state law, 42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, the Privacy Act at 5 U.S.C. § 552a, and the U.S. Constitution's First, Fourth, Eighth, and Fourteenth Amendments by causing and/or allowing Plaintiff to suffer a retaliatory campaign of arbitrary, capricious, and otherwise unlawful oppression during which he was denied due process and equal protection of law in deprivations of guaranteed liberty, property, and privileges, in denials of meaningful and unimpeded access to the courts, in falsified disciplinary action, in destruction of personal property, in denial of guaranteed visitation rights, and in retaliatory transfer to another prison all for no valid reasons serving legitimate penological objectives pursuant to and in furtherance of the pervasive custom and/or policy of thus oppressing and

otherwise abusing SNY prisoners throughout the CDCR and at SATF - particularly in retaliation for their lawful exercise of protected rights - as caused and/or allowed by defendants Adams, Cuevas, Domen, Foulks, Sherman, Tilton, an Wan." (Doc. 16, pg. 43.) Under this claim Plaintiff alleges a series of events that took place in retaliation for his filing of inmate appeals – i.e. Johnson issuing a "falsified disciplinary write-up for having a clothesline inside his cell" (Id., pg. 50); he was limited to a sixty minute non-contact visit with a visitor who had come over 250 miles to see him (Id., pg. 51); he was deemed a threat and placed in Ad-Seg until transferred (Id., pp. 52-53); and Esparza intentionally damaged Plaintiff's personal typewriter (Id., pg. 53).

Plaintiff's third claim is against Defendants Adams, Burleson, Clark, Cooper, Cuevas, Does 1-5, Foulks, Garcia, Grannis, Hall, Hense, McCant, Motty, Murberger, Odle, Ortiz, Pugliese, Sherman, Surges, Tilton, Wan, and Woodford. In the title under his third claim Plaintiff alleges that these defendants "violated at least state law, 42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, and the U.S. Constitution's First and Fourteenth Amendments by causing and/or allowing Plaintiff to suffer a continuous campaign of arbitrary, capricious, and otherwise unlawfully oppressive violations and deprivations of guaranteed and protected rights, liberty, due process, and equal protection - particularly under state law in trying to petition the government for a redress of grievances so as to gain meaningful and unimpeded access to the courts - for no valid reasons serving legitimate penological objectives pursuant to and in furtherance of the CDCR's pervasive 'Code of Silence' custom and/or policy of thus oppressing and otherwise abusing SNY prisoners throughout the California Prison System and at SATF - especially to frustrate, hinder, impede, and otherwise obstruct and prevent such prisoners from getting the CDCR's systemic problems satisfactorily and/or otherwise effectively identified, addressed, and resolved at the lowest possible levels - as caused and/or allowed by Defendants Adams, Clark, Foulks, Grannis, Hense, Sherman, Tilton, Wan, and Woodford." (Doc. 16, pg. 54.) Under this claim Plaintiff complains of the processing and handling of his inmate appeals/grievances.

The Court's prior screening order provided Plaintiff the applicable standards for his claims. The Court finds that some of Plaintiff's claims are cognizable, but some of his claims

suffer from uncorrectable deficiencies so as to require dismissal with prejudice.[1]

### D. **Plaintiff's Claims**

#### 1. *Supervisory Personnel*

Plaintiff names the following supervisory prison personnel:  CDCR Secretaries Jeanne Woodford and James Tilton; SATF Warden Darrel G. Adams; Inmate Appeals Coordinator Nola Grannis; J. Burleson and T. Surges in the inmate appeals under Grannis; CDCR Inspector General Matthew Cate; SATF Associate Wardens Ken, Clark D. Foulks, L. Hense, S. Sherman, and T. Wan; SATF Appeals Coordinators C.L. Cooper, V.R. Garcia, R. Hall, and E. McCant; Captain D. Cuevas; SATF law library supervisor P. Domen; Sergeants D. L. Henson and C. Pugliese; Lieutenants B. Odle and J.T. Tucker; Captain S. Ortiz; Law Library Supervisor R. Rollins; and Classification Supervisor D. Selvy.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

---

[1] The Court notes that Plaintiff's First Amended Complaint was only twelve pages long, but that his Second Amended Complaint has ballooned to seventy-three pages in length.  Thus, it appears that Plaintiff has explained his claims in great detail, and has apparently set forth a complete rendition of factual allegations upon which he bases his claims.

At the end of each of his counts under each of his claims, Plaintiff concludes that he "personally informed each of the following defendants of the above events and circumstances - and/or they were otherwise made personally aware thereof - but they refused or otherwise failed to take appropriate corrective action on Plaintiff's behalf despite possessing sufficient rank, responsibility, and opportunity to do so . . . ." (Doc. 16, pp. 27- 70.) However, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Concluding that a supervisory defendant knew of events (either via inmate appeals or personal communication), but did not take corrective action is not sufficient to show that a specific defendant's inaction caused an alleged violation. Thus, Plaintiff's claims that CDCR Secretaries Jeanne Woodford and James Tilton; SATF Warden Darrel G. Adams; Inmate Appeals Coordinator Nola Grannis; J. Burleson and T. Surges in the inmate appeals under Grannis; CDCR Inspector General Matthew Cate; SATF Associate Wardens Ken, Clark D. Foulks, L. Hense, S. Sherman, and T. Wan; SATF Appeals Coordinators C.L. Cooper, V.R. Garcia, R. Hall, and E. McCant; Captain D. Cuevas; SATF law library supervisor P. Domen; Sergeants D. L. Henson and C. Pugliese; Lieutenants B. Odle and J.T. Tucker; Captain S. Ortiz; Law Library Supervisor R. Rollins; and Classification Supervisor D. Selvy were aware of his factual allegations, but refused or otherwise failed to take appropriate corrective action on Plaintiff's behalf should be dismissed as Plaintiff has not sufficiently alleged facts to indicate that any of the defendants mentioned in this section personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated

or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646.

### 2. *Violation(s) of the California Code of Regulations*

Throughout all three of his claims, Plaintiff restates excerpts of Title 15 of the California Code of Regulations. The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations. The Court has found no authority to support a finding that there is an implied private right of action under Title 15, and Plaintiff provides none. Given that the statutory language does not support an inference that there is a private right of action, the Court finds that Plaintiff is unable to state any cognizable claims upon which relief may be granted under Title 15. All such claims are properly dismissed.

### 3. *First Amendment*

In all three of his claims, Plaintiff alleges that his constitutional rights under the First Amendment were violated.

### a. *Retaliation*

Plaintiff's first and second claims allege that he was retaliated against for his (and his mother's)[2] actions complaining of the conditions and abuses in prison – including filing prisoner grievances and lawsuits.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

---

[2] Plaintiff is not an attorney and is proceeding without counsel. A non-attorney proceeding pro se may bring his own claims to court, but may not represent others. Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (2000); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997); C. E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987). Plaintiff cannot pursue claims on his mother's behalf. Thus, this action will be construed as an individual civil suit brought solely by Plaintiff.

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

In his first claim, Plaintiff alleges that he was subjected to retaliation by Pugliese, Smith, Motty, Guerrero, Meaders, Johnson, and Does 1-5 denying him indigent correspondence supplies, delaying his mail, obstructing his outgoing mail, denying him all but the May 2005 issue of his subscription of Prison Legal News. Plaintiff alleges that the acts of retaliation complained of did not reasonably advance any legitimate correctional objective. (Doc. 16, pg. 21.)

In his second claim, Plaintiff alleges that he was subjected to retaliation by Johnson's issuing a false "disciplinary write-up for having a clothesline inside his cell" (Id., pg. 50); by Adams' and Cuevas' instructing CDCR personnel at SATF to limit Plaintiff to a sixty minute non-contact visit with a visitor who had come over 250 miles to see Plaintiff (Id., pg. 51); by Larios' falsely telling Adams, Cuevas, Smith, Tucker, and other CDCR personnel that Plaintiff was a threat to safety and security at SATF as Plaintiff had been housed in the same prison as Larios' brother in 2003 (Id., pg. 52); by Tucker who, based on Larios' false accusations, issued an ad-seg confinement order falsely alleging that Plaintiff presented an immediate threat to safety and security at SATF such that Plaintiff was handcuffed, subjected to an unclothed body search, placed in a small cage, and subsequently placed in an ad-seg cell where the exterior window had been painted over, all personal property, liberty, and privileges were taken away (Id., pg. 52); by

8

Smith who retained Plaintiff in ad-seg (Id., pp. 52-53); by Esparza who intentionally damaged Plaintiff's personal typewriter (Id.); and by Sherman, Smith, and Selvy who put Plaintiff up for a retaliatory prison transfer.

Plaintiff does not allege any retaliation in his third claim.

Thus, Plaintiff states cognizable claims for retaliation against Pugliese, Smith, Motty, Guerrero, Meaders, Johnson, Adams, Cuevas, Tucker, Sherman, Selvy, and Does 1-5.

### b. *Mail*

In his first claim Plaintiff alleges a series of events wherein Motty, Pugliese, Smith, Guerrero, Cooper, Garcia, and Hall variously delayed his mail (Doc. 16, pp. 21-42); Meaders seized thirty pages of internet generated material from an incoming letter (Id., pg. 36); his "confidential mail" was opened, read, and delayed by Does 1 - 5 (Id., pg. 39); Johnson, Meaders, Motty, Pugliese, and Does 1-5 caused him to only receive the May 2005 issue of his subscription of Prison Legal News (Id., pg. 42); and the delay of his correspondence variously resulted in rejection of his inmate appeals for untimeliness (Id., pp. 21-42). Plaintiff does not state any allegations regarding the handling of his mail in his second and/or third claims.

### *(1) Incoming Mail*

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Plaintiff alleges Meaders seized thirty pages of internet generated material from an incoming letter. (Id., pg. 36.) Plaintiff's allegation that the items seized were "internet generated

material" does not show that Plaintiff had any protected interest in receiving such documents. Further, despite having been previously given the legal standards, Plaintiff fails to show any regulation that Meaders was acting under when he seized these pages from Plaintiff's incoming mail. Thus, while Plaintiff's claim against Meaders for seizing thirty pages of internet generated material from an incoming letter is a cognizable form of retaliation (as discussed previously), these same acts are not cognizable as to Meaders' actions purely on the basis of interfering with Plaintiff's mail. Such claims are appropriately dismissed.

### (2) Outgoing Mail

Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) only as test relates to *incoming mail* - Turner test applies to incoming mail).

Plaintiff alleges that Motty, Pugliese, Smith, Guerrero, Cooper, Garcia, Hall, and Does 1-5 variously delayed his outgoing mail due to issues of Plaintiff's compliance with indigent mailing requirements/regulations. (Doc. 16, pp. 21-42.) Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. Pell v. Procunier, 417 U.S. 817 (1974). Because a balancing of those rights and interests requires the parties to make an evidentiary showing as to their positions, the Court is not in a position to make a determination at the pleading stage. Barrett v. Belleque, 544 F.3d 1060 (9th Cir. 2008). Thus, Plaintiff's claims that the handling of his outgoing mail by Motty, Pugliese, Smith, Guerrero, Cooper, Garcia, Hall, and Does 1-5 violated his First Amendment are cognizable.

### (3) Legal Mail

The mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence does not state a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th

Cir. 1996). Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-7 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). In Wolff v. McDonnell, the Supreme Court noted that inspecting mail from attorneys in the presence of the inmate did all, and perhaps even more, than the Constitution requires. Id. at 577. The issue of whether or not prison officials may also, consistent with the First Amendment, open and visually inspect mail from attorneys outside the presence of the prisoner has not been decided by the Supreme Court, or by the Ninth Circuit. In Wolff v. McDonnell, the legal mail at issue was mail sent to respondent from his own attorney. Correspondence between an attorney and a client is entitled to special protection under the attorney-client privilege. "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).

Plaintiff alleges that Does 1-5 opened and read "incoming confidential correspondence addressed to Plaintiff outside of Plaintiff's presence . . ." and prevented Plaintiff from receiving it for more than three weeks after it arrived at SATF. (Doc. 16, pg. 39.) Despite having been given opportunity to explain, Plaintiff once again failed to state whom the correspondence was from, and why he believes it was "confidential." Thus, Plaintiff fails, and appears unable to state a cognizable claim for his "incoming confidential correspondence" having been opened and read outside of his presence. All such claims are subject to dismissal.

### *(4) Publications*

Plaintiff alleges that, Johnson, Meaders, Motty, Pugliese, and Does 1-5 "unlawfully refused or otherwise failed to give Plaintiff any of his Prison Legal News issues except for the one for May 2005." (Doc. 16, pg. 42.)

A prisoner's right to receive publications from outside the prison should be analyzed in light of the Turner factors. See Morrison v. Hall, 261 F.3d 896, 901-02 (9th Cir. 2001).

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52

11

F.3d 264, 265 (9th Cir. 1995). Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987). <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989). Plaintiff's allegations in this regard are insufficient and thus are not cognizable. Despite having been given opportunity to amend and clarify his allegations in this regard, Plaintiff does not state whether he was denied the issues of his subscription as the result of a regulation, prison policy, negligence, disciplinary action, seizure, or the like. The continuing sparsity of Plaintiff's allegations on this issue render his claim uncognizable and subject to dismissal.

### 4. *Fourth Amendment*

In his second claim, Plaintiff alleges that his constitutional rights under the Fourth Amendment were violated. As best as the Court can decipher, Plaintiff attempts to state cognizable claims under the Fourth Amendment relating to Esparza damaging his personal typewriter, and the fact that he was subjected to an unclothed body search and denied his personal property when he was placed and held in Ad-Seg from August 1, 2005 through August 23, 2005. (Doc. 16, pp. 52-53.)

"[T]he fourth amendment does not protect an inmate from the seizure and destruction of his property." <u>Taylor v. Knapp</u>, 871 F.2d 803, 806 (9th Cir. 1989). "This does not mean a prisoner is without redress; it simply means a prisoner's form of redress is through the fifth and fourteenth amendments." <u>Id</u>. Thus, Plaintiff's claims regarding the destruction of his typewriter and the denial of his personal property while he was held in Ad-Seg will be addressed under the discussion of his claims under the Fourteenth Amendment herein below.[3]

The Fourth Amendment does, however, protect prisoners against unreasonable strip searches. <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 332 (9th Cir. 1988). "[T]he reasonableness of a particular search is determined by reference to the prison context." <u>Id</u>. "A prison has a

---

[3] Plaintiff does not, and has never attempted to, allege that he is making any claims under the Fifth Amendment. Thus, the Court need not analyze Plaintiff's claims under the standards applicable to the Fifth Amendment. " '[T]he party who brings a suit is master to decide what law he will rely upon.' " <u>O'Guinn v. Lovelock Corr. Ctr.</u>, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting <u>Bogovich v. Sandoval</u>, 189 F.3d 999, 1001 (9th Cir. 1999) (internal quotations and citation omitted)).

compelling and uncontroverted interest in preventing the introduction into or the transporting

throughout the prison of contraband and in maintaining order in the institution.  A prisoner has a

very limited reasonable expectation of privacy in regard to a search of his person.  There is no

requirement that a search be supported by either probable cause or reasonable suspicion; instead

the relevant inquiry is whether under all of the circumstances the search was reasonable.  And the

determination of reasonableness depends, as it does in any Fourth Amendment case, on the

specific facts presented.  In particular, a court "must consider the scope of the particular

intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

which it is conducted."  People v. Collins 115 Cal.App.4th 137, 154-55 (2004) citing Bell v.

Wolfish 441 U.S. 520, 559 (1979).

Plaintiff has not alleged sufficient facts to state a cognizable claim that he was subjected

to an unreasonable search of his person under the Fourth Amendment.  Plaintiff's only

allegations in this regard are that, prior to being placed in Ad-Seg, he was subjected to an

unclothed body search.  (Doc. 16, pg. 52.)  Despite being given opportunity to do so, Plaintiff

does not state any allegations to address the scope of the particular intrusion, the manner in

which it was conducted, any justification for initiating it, and the place in which it was conducted

for the Court to ascertain if it was unreasonable.

Thus, Plaintiff fails to state any cognizable claims under the Fourth Amendment.  All

such claims are properly dismissed.

### 5. *Eighth Amendment*

In his second claim, Plaintiff alleges that his constitutional rights under the Eighth

Amendment were violated.  Plaintiff's only factual allegations that might conceivably fall under

the Eighth Amendment have to do with the conditions of his confinement while he was held in

Ad-Seg.  (Doc. 16, pp. 52-53.)

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

conditions must involve "the wanton and unnecessary infliction of pain...." Rhodes v. Chapman,

452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison

officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir.1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm ." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998).

The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious...." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety...." Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45.

Plaintiff fails to state any condition that rises to the level of an excessive risk to his health or safety that prison personnel were deliberately indifferent to.

" '[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.' " Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1995) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir.1979)).  Thus, "[the] deprivation of outdoor exercise [can] constitute cruel and unusual punishment." Allen, 48 F.3d at 1087.  However, the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997); Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir.2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); Allen, 48 F.3d at 1086-88 (only forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment requirement).

Plaintiff complains of ten days of no outdoor exercise time and eleven days of infrequent outdoor exercise in a metal cage.  (Doc. 16, pp. 52-53.)  These allegations state only a temporary denial of outdoor exercise.  Plaintiff fails to allege any medical effects from this temporary denial

of outdoor exercise. Thus, he fails to state a cognizable claim regarding the limits placed on his access to outdoor exercise for the twenty two days he was in Ad-Seg (from 08/01/05 - 08/23/05).

Further, temporarily unconstitutional conditions of confinement do not rise to the level of constitutional violations. See Anderson v. County of Kern 45 F.3d 1310 (9th Cir. 1995) and Hoptowit v. Ray 682 F.2d 1237 (9th Cir. 1982). Plaintiff's allegations that the windows of his cell in Ad-Seg were covered, that he was denied religious services, contact visits, phone calls, and association with others might rise to the level of unconstitutional conditions of confinement if they continued for an extended period of time. However, since his entire stint in Ad-Seg at SATF was only twenty two days (from 08/01/05 - 08/23/05), it qualifies only as a temporary condition which fails to rise to the level of a cognizable constitutional violation.

Thus, Plaintiff fails to state any cognizable claims for violations of his rights under the Eighth Amendment. All such claims are properly dismissed.

### 6. *Fourteenth Amendment*

#### a. *Procedural Due Process*

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they

15

rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Toussaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added).

However, prisoners may be housed in Administrative Segregation to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt v. Helms, 459 U.S. 460, 468

(1983) – overruled on other grounds.

Plaintiff alleges that Johnson issued Plaintiff a "falsified disciplinary writeup for having a clothes line inside his cell." (Doc. 16, pg. 50.)  Plaintiff does not allege that he was subjected to any disciplinary action as a result of Johnson's actions, nor does he allege any resulting infringement on a liberty interest.  Thus, Plaintiff's allegations against Johnson are not cognizable and are appropriately dismissed.

Plaintiff also alleges that Larios falsely accused Plaintiff of being "a threat to the safety and security" of SATF because Plaintiff and Larios' incarcerated brother had been housed at the same institution in 2003.  (Id. At pg. 52.)  Based on Larios' accusations, Tucker authored an Ad-Seg confinement order falsely accusing Plaintiff of being "a threat to the safety and security" of SATF.  (Id.)  Plaintiff was placed in Ad-Seg and Smith and Sherman ordered that Plaintiff be retained in Ad-Seg.  (Id.)  Despite having been given the standards and opportunity to clarify and/or correct his allegations, Plaintiff once again fails to state any facts to establish what, if any, established liberty interest he had that he was improperly deprived of without due process of law.  Further, Plaintiff did not state any facts to address any of the requirements set forth in Wolff.  Thus, Plaintiff fails to state a cognizable claim for violation of his right to procedural due process under the Fourteenth Amendment.  All such claims are properly dismissed.

**b.  *Substantive Due Process***

Plaintiff alleges that Esparza damaged his personal typewriter and that he was denied his personal property while he was confined in Ad-Seg.  (Doc. 16, pp. 52, 53.)

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan v. Zimmerman Brush Co., 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

It appears Esparza's damaging Plaintiff's personal typewriter was an unauthorized act – which is not cognizable as he has a meaningful post-deprivation remedy for such a loss.

It appears Plaintiff alleges that the denial of his personal property while he was held in Ad-Seg was an authorized act. However, Plaintiff fails to allege any facts to show that he was denied his personal property in Ad-Seg without due process of law. As long as Plaintiff was provided with process, prison officials may deprive him of his property. Thus, Plaintiff fails to state a cognizable claim under the Fourteenth Amendment for both Esparza's damaging of his personal typewriter and the denial of his property when he was held in Ad-Seg. All such claims are properly dismissed.

### c. *Inmate Appeals*

In all three of his claims, Plaintiff alleges that his constitutional rights under the Fourteenth Amendment were violated. Plaintiff complains that CDCR Secretaries Jeanne Woodford and James Tilton; SATF Warden Darrel G. Adams; Inmate Appeals Coordinator Nola Grannis; J. Burleson and T. Surges in the inmate appeals under Grannis; CDCR Inspector General Matthew Cate; SATF Associate Wardens Ken, Clark D. Foulks, L. Hense, S. Sherman, and T. Wan; SATF Appeals Coordinators C.L. Cooper, V.R. Garcia, R. Hall, and E. McCant; Captain D. Cuevas; SATF law library supervisor P. Domen; Sergeants D. L. Henson and C. Pugliese; Lieutenants B. Odle and J.T. Tucker; Captain S. Ortiz; Law Library Supervisor R. Rollins; and Classification Supervisor D. Selvy were notified of the violations of his constitutional rights via his various inmate appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest nor a substantive right in inmate appeals, Plaintiff fails, and is unable to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals such that his claims in this regard against CDCR Secretaries Jeanne Woodford and James Tilton; SATF Warden Darrel G. Adams; Inmate Appeals Coordinator Nola Grannis; J. Burleson and T. Surges in the inmate appeals under Grannis; CDCR Inspector General Matthew Cate; SATF Associate Wardens Ken, Clark D. Foulks, L. Hense, S. Sherman, and T. Wan; SATF Appeals Coordinators C.L. Cooper, V.R. Garcia, R. Hall, and E. McCant; Captain D. Cuevas; SATF law library supervisor P. Domen; Sergeants D. L. Henson and C. Pugliese; Lieutenants B. Odle and J.T. Tucker; Captain S. Ortiz; Law Library Supervisor R. Rollins; and Classification Supervisor D. Selvy should be dismissed.

Plaintiff's entire third claim complaining of the processing and handling of his inmate appeals/grievances is thus subject to dismissal.

Further, it appears that Plaintiff might be attempting to state a claim that his access to the courts was somehow impaired by the handling of his inmate appeals. However, exhaustion and availability of administrative remedies is an affirmative defense under which the defendants have the burden of raising and proving the absence of exhaustion. Jones v. Bock, 127 S.Ct. 910, 921 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Plaintiff's claim that his access to the courts was impaired by the handling of his inmate appeals is not cognizable and should be

dismissed.

### 7. *5 U.S.C. § 552a*

In the title of his second claim, Plaintiff lists "the Privacy Act at 5 U.S.C. § 552a" as a section under which his rights were violated.

Section 552a of Title 5 provides privacy protections as to records maintained on individuals by governmental agencies. Plaintiff fails to state any factual allegations to show what, if any, records he feels were improperly disclosed and/or recorded. Further, Plaintiff fails to state any allegations to show that he submitted a request to have any such information held on him amended, and/or whether that he was adversely effected by any action and/or inaction under this section.

To the extent that Plaintiff is complaining of the accuracy of information contained in his prison record (based on the allegedly false disciplinary reports filed by Larios and/or Johnson) he is advised that the Ninth Circuit has not found that prisoners have an independent right, grounded in the Due Process Clause, to an accurate prison record. <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1319 (9th Cir. 1987). As previously stated, liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u> at 484.

Plaintiff has alleged no facts with regard to the information that he seeks to have expunged or corrected in his prison record and/or central file that establish the existence of a liberty interest that might entitle him to due process. Any concern on Plaintiff's part that the information will be used against him at a future hearing is premature.

Accordingly, Plaintiff fails to state a cognizable claim for violation of any of his rights under the Privacy Act at 5 U.S.C. § 552a. Thus, all such claims are properly dismissed.

### 8. *42 U.S.C. § 1985*

In all three of his claims, Plaintiff alleges that his constitutional rights under 42 U.S.C. § 1985 were violated.

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted).  A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim.  Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted).  Restraint must be exercised in extended section 1985(3) beyond racial prejudice.  Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (citation omitted). A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy.  Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (citation omitted).  A mere allegation of conspiracy is insufficient to state a claim.  Id. at 676-77.

Plaintiff does not make any factual allegations to show a conspiracy existed for the purpose of depriving him equal protection of the laws or privileges and immunities under the laws, that was acted upon in furtherance of the conspiracy that injured Plaintiff in any way as a result of racial animus.  Plaintiff fails to state any allegations to support his claim(s) under 42 U.S.C. § 1985 other than to list it as being violated by the defendants in the titles of each of his three claims.  Plaintiff fails to state any factual allegations to state a cognizable conspiracy claim. All such claims are not cognizable and are properly dismissed.

### 9. *18 U.S.C. §§ 241, 242*

In all three of his claims, Plaintiff alleges that his constitutional rights under 18 U.S.C. §§ 241, 242 were violated.  Section 241 provides criminal punishment for conspiracies against rights secured by the Constitution or laws of the United States; section 242 provides criminal punishment for acts causing a deprivation of rights, privileges, or immunities secured or protected by the Constitution of laws of the United States or to different punishments, pains, or penalties on account of such person being an alien, or by reasons of his color, or race, than are prescribed for the punishment of citizens by anyone acting under color of law.  Neither of these sections provides basis for Plaintiff to pursue claims of violation of his constitutional rights.  All such claims should be dismissed.

### 10. *State Law*

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because Plaintiff has stated a few cognizable claims for relief under section 1983, the Court would normally reserve discretion to exercise supplemental jurisdiction over Plaintiff's state law claims. However, Plaintiff merely states in each of his three claims that the defendants have "violated at least state law." Plaintiff fails to specify what, if any claims he intends to pursue under state law. Thus, Plaintiff's claims under state law are properly dismissed at this time.

## II.    RECOMMENDATION

Plaintiff's Second Amended Complaint states cognizable claims for relief (1) against Defendants Pugliese, Motty, Gurrero, Meaders, Johnson, Adams, Cuevas, Smith, Tucker, Sherman, Selvy, and Does 1-5 for retaliating against Plaintiff due to Plaintiff engaging in protected First Amendment activities; and (2) against Defendant Motty, Pugliese, Smith, Guerrero, Cooper, Garcia, Hall, and Does 1-5 for interfering with his right to send mail in violation of the First Amendment. However, Plaintiff's complaint does not state any other cognizable claims upon which relief may be granted.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.    This action proceed on Plaintiff's First Amended Complaint, filed
      November 13, 2008 against:

      a.  Defendants Pugliese, Smith, Motty, Gurrero, Meaders, Johnson,
      Adams, Cuevas, Tucker, Sherman, Selvy, and Does 1-5 for
      retaliating against Plaintiff due to Plaintiff engaging in protected
      First Amendment activities; and

      b.  Defendants Motty, Puglise, Smith, Guerrero, Cooper, Garcia,
      Hall, and Does 1-5 for interfering with his right to send mail in
      violation of the First Amendment.

2.    All of Plaintiff's claims, other than as found cognizable immediately
      above, be dismissed for failure to state a claim upon which relief may be
      granted; and

3.    Defendants Woodford, Tilton, Burleson, Cate, Clark, Domen, Esparza,
      Foulks, Grannis, Hense, Henson, Larios, McCant, Murberger, Odle, Ortiz,
      Rollins, Surges, Wan, and Does 6-10 be dismissed from this action based
      on Plaintiff's failure to state any claims upon which relief may be granted
      against them.

These Findings and Recommendations will be submitted to the United States District
Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within
**thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file
written objections with the Court.  The document should be captioned "Objections to Magistrate
Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections
within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.
Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 7, 2009**          **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE