# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERIC CHARLES RODNEY K'NAPP,

        Plaintiff,

   v.

D. G. ADAMS, et al.,

        Defendants.

1:06-cv-01701-LJO-GSA-PC

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST BE GRANTED IN PART AND DENIED IN PART
(Doc. 40.)

OBJECTIONS, IF ANY, DUE IN THIRTY DAYS

## I. BACKGROUND

Plaintiff Eric Charles Rodney K'napp ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Original Complaint commencing this action on November 22, 2006. (Doc. 1.) This action now proceeds on the Second Amended Complaint filed by Plaintiff on November 13, 2008, against defendants Warden Derral G. Adams, Sergeant ("Sgt.") C. Pugliese, Lieutenant ("Lt.") E. Smith, K. Motty, R. Guerrero, E. Meaders, Sgt. B. Johnson, Captain D. Cuevas, Lt. J. T. Tucker, Associate Warden S. Sherman, D. Selvy (Classification Services Representative), and Does 1-5 (Mailroom Workers) for retaliating against Plaintiff, and against defendants K. Motty, Sgt. C. Pugliese, Lt. Smith, R. Guerrero, Appeals Coordinator Cooper, Appeals Coordinator V. R. Garcia, Appeals Coordinator R. Hall, and Does 1-5 (Mailroom Workers) for interfering with his right to send mail in violation of the First Amendment.[1]

---

[1] All other claims and defendants were dismissed from this action by the Court on August 17, 2009, based on Plaintiff's failure to state a claim. (Doc. 29.)

1

(Doc. 16.)  Plaintiff is presently incarcerated at the Sierra Conservation Center in Jamestown, California.  On February 19, 2010, defendants Adams, Selvy, Motty, Cuevas, Sherman, Hall, Pugliese and Smith ("Defendants") filed a motion to dismiss for failure to exhaust administrative remedies.[2]  (Doc. 40.)  On March 17, 2010, Plaintiff filed an Opposition to the motion.[3]  (Doc. 41.)  On April 15, 2010, Defendants filed a Reply.  (Doc. 48.)  Defendants' motion to dismiss is now before the Court.

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff makes allegations and brings claims as follows in the Second Amended Complaint.[4]  At the time of the events at issue, Plaintiff was incarcerated at the California Substance Abuse Treatment Facility ("SATF"), and Defendants were all employees of the California Department of Corrections and Rehabilitation ("CDCR").   Plaintiff requests money damages, declaratory relief, and injunctive relief.

### A.   RETALIATION – Defendants Adams, Pugliese, Smith, Motty, Guerrero, Meaders, Johnson, Cuevas, Tucker, Sherman, Selvy, and Does 1-5

Plaintiff claims that defendants Adams, Pugliese, Smith, Motty, Guerrero, Meaders, Johnson, Cuevas, Tucker, Sherman, Selvy, and Does 1-5 retaliated against him, in violation of the First Amendment, because Plaintiff complained of the conditions and abuses in prison and filed prisoner grievances and lawsuits.

Plaintiff alleges that defendants Pugliese, Smith, Motty, Guerrero, Meaders, Johnson, and Does 1-5 denied him indigent correspondence supplies, delayed his mail, obstructed his outgoing mail, and denied him all but the May 2005 issue of his subscription of Prison Legal News.  Plaintiff alleges that defendant Johnson issued a false disciplinary write-up against Plaintiff for having a

---

[2]On March 22, 2010, defendants Johnson and Cooper joined the present motion to dismiss.  (Doc. 43.)  Defendants Guerrero, Meaders, Tucker, and Garcia have not been served with process, have not joined the present motion to dismiss, and have not otherwise made any appearance in this action.  (See Court Docket and Doc. 35.)  The Doe defendants cannot be served until Plaintiff has identified them as actual individuals and amended the complaint to substitute their names.

[3]Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on September 24, 2009.  Wyatt v. Terhune, 315 F.3d 1108, 1120 n.1 (9th Cir. 2003).  (Doc. 32.)

[4]This summary includes Plaintiff's claims in the Second Amended Complaint found cognizable by the Court on August 17, 2009, and Plaintiff's related allegations, upon which this case now proceeds.  (Docs. 23, 29.)

clothesline inside his cell.  Plaintiff alleges that defendants Adams and Cuevas instructed CDCR personnel at SATF to limit Plaintiff to a sixty-minute non-contact visit with a visitor who had come over 250 miles to see Plaintiff.  Plaintiff alleges that defendant Tucker issued an order falsely alleging that Plaintiff presented an immediate threat to safety and security at SATF, such that Plaintiff was handcuffed, subjected to an unclothed body search, placed in a small cage, and subsequently placed in an Ad-Seg cell where the exterior window had been painted over, and all personal property, liberty, and privileges were taken away.  Plaintiff also alleges that defendant Smith retained Plaintiff in Ad-Seg, and that defendants Sherman, Smith, and Selvy transferred Plaintiff to another prison.

### B.   MAIL INTERFERENCE – Defendants Motty, Pugliese, Smith, Guerrero, Cooper, Garcia, Hall, and Does 1-5

Plaintiff claims that defendants Motty, Pugliese, Smith, Guerrero, Cooper, Garcia, Hall, and Does 1-5 interfered with his constitutional right to send mail, when they delayed his outgoing mail due to issues about Plaintiff's compliance with indigent mailing requirements /regulations.

## III.   STATUTORY EXHAUSTION REQUIREMENT

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated.  Booth v. Churner, 532 U.S. 731, 741 (2001).  "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83-84.

The PLRA requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  42 U.S.C. § 1997e(a).  The Booth court held that the PLRA requires administrative exhaustion even where the grievance process does not permit award of money damages and the prisoner seeks only money damages, as long as the grievance tribunal has

3

authority to take some responsive action.  Booth, 532 U.S. at 732.  "The meaning of the phrase 'administrative remedies ... available' is the crux of the case."  Id. at 731.  In discussing the meaning of the term "remedy," the court noted that "depending on where one looks, 'remedy' can mean either specific relief obtainable at the end of a process of seeking redress, or *the process itself*, the procedural avenue leading to some relief."  Id. at 738. (emphasis added.)  Thus, the court determined that the language of the statute, which requires that the "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained, refers to "exhaustion" of the *process available*. Id. at 738-739.  (emphasis added.)   It follows, then, that if an inmate exhausts the process that is made available to him, he has satisfied the requirement of the statute.  "Availability" of relief for purposes of the exhaustion requirement under the PLRA turns on how the prison views and treats a prisoner's complaint based on its own procedures.  Brown v. Valoff, 422 F.3d 926, 942 (9th Cir. 2004).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 215-16 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  Id.

**IV.    MOTION TO DISMISS FOR FAILURE TO EXHAUST**

The Court takes judicial notice of the fact that the CDCR has an administrative grievance system for prisoner complaints.  Cal. Code Regs., tit. 15 § 3084.1.  The process is initiated by submitting a CDC Form 602.  Id. at § 3084.2(a).  Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal

4

to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85; McKinney v. Carey, 311 F.3d. 1198, 1199-1201 (9th Cir. 2002).

### A.     Defendants' Motion

Defendants argue that because Plaintiff has only exhausted two administrative appeals concerning the allegations in the Second Amended Complaint, all of the claims not addressed in the two appeals should be dismissed from this action. Defendants provide evidence that Plaintiff filed only two appeals between March 2005 and November 11, 2006, which were accepted by the Inmate Appeals Branch, originated from Plaintiff's incarceration at SATF, and concerned the allegations in Plaintiff's Second Amended Complaint. (Declaration of D. Foston, Doc. 40-1 ("Foston Decl.")).

One appeal, log number SATF-05-02920, was denied at the Director's Level of review on March 14, 2006. (Foston Decl. ¶5.) In this appeal, Plaintiff complained that his incoming, outgoing, confidential, legal, and regular mail were being illegally censored, opened, delayed, or otherwise obstructed. Id. Plaintiff also alleged that his written communications to the Warden were ignored. Id.

The other appeal, log number SATF-05-02080, was denied at the Director's Level of review on December 20, 2005. (Foston Decl. ¶6.) In this appeal, Plaintiff complained that he had not received his requested indigent envelopes and writing paper for the months of April and May 2005, which violated his First Amendment right to correspond. Id. Plaintiff also alleged that a SATF staff member provided a false response to his appeal at the First Level of review. Id.

Defendants assert that Plaintiff's two exhausted appeals pertained only to Plaintiff's allegations about interference with his outgoing mail and his ability to receive indigent writing materials, and neither of these appeals, or any other appeal exhausted by Plaintiff, dealt with

///

Plaintiff's claims of retaliation. (Foston Decl. ¶7.) Therefore, Defendants request dismissal of all of Plaintiff's retaliation claims for failure to exhaust remedies.

### B.   Plaintiff's Position

The Court looks to Plaintiff's Original Complaint, First Amended Complaint, Second Amended Complaint, and verified Opposition.[5]

#### 1.   Plaintiff's Opposition

In his verified Opposition filed March 17, 2010, Plaintiff argues that his claims should not be dismissed for failure to exhaust remedies, because he exhausted all of the remedies "available" to him. (Opp'n., Doc. 41.) Plaintiff claims that he submitted at least eleven different administrative grievances and appeals regarding the allegations in his Second Amended Complaint, and most of them were obstructed or otherwise mishandled by CDCR personnel. (Id. at 18:8-14.)[6] Plaintiff asserts that he submitted grievances on Form 602 on April 10, 2005, April 21, 2005, May 1, 2005, May 24, 2005, June 28, 2005, July 5, 2005, July 19, 2005, August 4, 2005, September 5, 2005, October 4, 2005, and October 11, 2005, all which were obstructed or mishandled by prison personnel. (Id. at 25-30 and Exhs. A-F, H-K.) Plaintiff also asserts that he submitted one appeal on July 12, 2005, which was not obstructed. (Id. at 30 ¶10 and Exh. G.) Plaintiff argues that he should be excused, pursuant to federal case law, from completing the appeals process due to four "Special Circumstances" acknowledged by federal courts which are present in this case: (1) when prison officials do not respond to a prisoner's grievance within established time limits; (2) when prison officials reject a prisoner's grievance with instructions that are at odds with the wording of the established grievance regulations; (3) when affirmative conduct by prison officials otherwise directly interferes with a prisoner's ability to properly and fully exhaust administrative remedies in accordance with established grievance procedures and

---

[5] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff signed the Original Complaint, First Amended Complaint, and Second Amended Complaint under penalty of perjury. (Docs. 1, 9, 16.) Plaintiff also signed his Opposition under penalty of perjury. (Doc. 41.) Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified Complaints and Opposition, and the Exhibits supporting these documents.

[6] When a party's pagination on a document differs from that of the Court's electronic filing system, the Court uses the pagination of the Court's electronic filing system.

6

governing administrative regulations; and (4) when a prisoner's grievance is granted in relevant part at a preliminary level of review and/or is otherwise responded to or acted upon by prison officials in some substantial way that makes further review unnecessary or meaningless.  (Id. at 22-25.)

### 2. Original Complaint

In the Original Complaint, Plaintiff states that he filed grievances and completed grievance procedures regarding the claims in the Complaint.  (Cmp., Doc. 1 at 4 ¶B.)  Plaintiff alleges that when he tried to petition for redress of violations, his access to the grievance process was obstructed.  (Id. at 8-11 ¶¶1b, 1d, 1f, 1h, 1j, 1l, 1o, 2b, 2h, 2j.)

### 3. First Amended Complaint

In the First Amended Complaint, Plaintiff states that he filed grievances and completed grievance procedures regarding the claims in the Complaint.  (First Amd. Cmp., Doc. 9 at 4 ¶B.)  Plaintiff alleges that prison staff infringed on his ability to access the CDCR grievance system by refusing to accept, process, and review his grievances.  (Id. at 6 ¶7a(i), 8-10 ¶¶1b, 1d, 1f, 1h, 1j, 1l, 1o, 2b, 2h, 2j.)

### 4. Second Amended Complaint

In the Second Amended Complaint, Plaintiff claims that prior to initiating this action, he gave prison staff fair notice of and sufficient opportunity to address and resolve all claims in the Complaint, by submitting numerous administrative grievances concerning the alleged events and circumstances in accordance with the appeals process.  (Second Amd. Cmp., Doc. 16 at 7 ¶II.)  Plaintiff claims he exhausted all available remedies, and that prison staff obstructed his access to the appeals process, making such remedies unavailable.  (Id. )  Plaintiff claims that he submitted numerous grievances between May and October 2005, which were obstructed by defendants.  (Id. at 18 ¶¶(L), (m), (n), (p), (w), (x), 34 ¶56, 35 ¶60, 41 ¶90, 59-60 ¶¶141-44, 148, 61 ¶¶151-54, 62 ¶¶158-59, 63 ¶¶162-65, 64 ¶¶168-69, 65 ¶¶172-77, 66 ¶¶180-81, 67, ¶¶184-86, 68-69 ¶¶189-92, 69 ¶¶196-97, 200-201.)

///

///

7

**C.     Defendants' Reply**

In their Reply to Plaintiff's Opposition, Defendants contend that Plaintiff's evidence shows that he was not prevented from exhausting his claims of retaliation, and that he only exhausted appeals pertaining to his outgoing mail and his ability to receive indigent writing materials. Defendants argue that the "Special Circumstances" claimed by Plaintiff do not excuse his failure to exhaust. Defendants maintain that the appeals Plaintiff submitted as Exhibits A, B, E, F, I, and J are unrelated to any of his claims of retaliation. (Opp'n, Doc. 41 at Exhs. A, B, E, F, I, J.) With regard to Plaintiff's Exhibits C and F, Defendants have already admitted that those two appeals were exhausted, but they only concern Plaintiff's claims regarding his outgoing mail and his ability to receive indigent writing materials for a period of two months. (Id. at Exhs. C, D.)

**V.     DISCUSSION**

Defendants have shown that Plaintiff only submitted two appeals to all four levels of the appeals process, and neither of those appeals concerned Plaintiff's retaliation claims. (Declaration of D. Foston, Doc. 40-1 ("Foston Decl.")). Based on this evidence, Defendants argue that all of Plaintiff's retaliation claims should be dismissed by the Court based on Plaintiff's failure to exhaust remedies. The Court rejects this argument, because a Director's Level response is not necessary [under the PLRA] to satisfy the exhaustion requirement, as long as the "available" remedies have been completed. Brown, 422 F.3d at 935-36 ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available."). The question here is whether Plaintiff exhausted the remedies "available" to him with regard to all of Plaintiff's retaliation claims.

The Court has examined Plaintiff's evidence of eleven appeals he submitted using the prison appeals process between April and October 2005. (Exhs. A-K to Pltf's Opp'n, Doc. 41.) Two of the eleven appeals, as discussed next, mentioned retaliation by defendants. (Exhs. A, K.) The other nine appeals concerned issues other than retaliation.[7]

---

[7] The April 21, 2005 appeal concerned the confiscation of thirty pages as contraband from Plaintiff's incoming mail. (Exh. B.) The May 1, 2005 appeal concerned obstruction of outgoing mail and failure to provide Plaintiff with indigent writing supplies and postage. (Exh. C.) The May 24, 2005 appeal concerned Plaintiff's discipline for possession of a clothesline. (Exh. D.) The June 28, 2005 appeal concerned lack of access to the law library and insufficiency of resources at the law library. (Exh. E.) The July 5, 2005 appeal concerned obstruction of

8

### A. April 10, 2005 Appeal – SATF-E-05-01531

Appeal log number SATF-E-05-01531 was submitted by Plaintiff to the Informal Level on April 10, 2005. (Exh. A.) The appeal chiefly concerned several instances of interference with Plaintiff's incoming and outgoing, regular and confidential/legal mail. Id. However, Plaintiff also mentioned "fear of the harassment and retaliation I've already been threatened with by staff at this prison (i.e., retaliatory cell searches in violation of CCR 15 § 3287(a)(2) and/or other misconduct if I exercise my rights under the U.S. Constitution's First Amendment)," and alleged that the housing-unit staff "harassed me ... because I asserted my right [to have envelopes to the warden processed as confidential mail] and their duty in regard thereto." Id. The appeal was denied at the First and Second Levels of review and rejected as untimely at the Director's Level. Id.

Plaintiff claims the Director's Level review was unavailable to him because the mail staff refused to affix postage to the envelope when Plaintiff attempted to mail the grievance to the Director. Plaintiff claims he was entitled to free postage under prison regulations, but the prison refused to comply. Plaintiff notified the mail staff and other prison officials several times that he was entitled to free postage, and that their refusal to provide the postage was obstructing his access to the Director's Level. (Exh. A at 13-57.) Plaintiff's requests for free postage were denied, and by the time Plaintiff's appeal was received at the Director's Level, the fifteen-day deadline had expired and the appeal was rejected as untimely. (Id. at 54-57.)

Plaintiff's evidence does not support the assertion that prison staff prevented him from mailing his appeal to the Director's Level on time.[8] Evidence shows that Plaintiff was well informed of the mail procedures at SATF before the 15-day deadline expired, and that he had more than one way to obtain postage. Plaintiff was informed in the First Level response on May 5, 2005, that

---

outgoing mail and failure to provide Plaintiff with indigent writing materials and postage. (Exh. F.) The July 12, 2005 appeal concerned visitation privileges during a lockdown. (Exh. G.) The July 19, 2005 appeal concerned obstruction of incoming and outgoing mail. (Exh. H.) The September 5, 2005 appeal concerned the prison's refusal to give Plaintiff issues of Prison Legal News from his incoming mail. (Exh. I.) And the October 4, 2005 appeal concerned the prison's refusal to provide Plaintiff with a copy of his CDC-119 form showing records of his correspondence. (Exh. J.)

[8] Plaintiff had a 15-day deadline from June 17, 2005, the date he received his response from the Second Level, in which to submit an appeal to the Director's Level. (Exh. A at 10.)

9

pursuant to mail procedures at SATF, the mailroom only applies free postage for the mailing of claims to the Board of Control and for the filing of legal documents to any court, and Plaintiff's mail did not fall under these categories. (Id. at 6.) Plaintiff was also informed that SATF supplies indigent inmates, such as Plaintiff, with envelopes and postage for five one-ounce letters per week, to be used for regular or confidential/legal mail, or to use as postage on larger envelopes by attaching them to the large envelope. Id. Plaintiff was again informed in the Second Level response on June 21, 2005, that his mail did not qualify for free postage because, pursuant to regulations, it was not addressed to the Board of Control or to any court. (Exh. A at 11.) On June 29, 2005, Plaintiff was again informed that as an indigent inmate, he was entitled, upon his request, to "envelopes and the minimum postage required for first class domestic mail for up to five one ounce letters per week," and that he was entitled to "free and unlimited postage for the mailing of claims to the Board of [C]ontrol and for the filing of legal documents to any court." (Id. at 17.) For weeks, Plaintiff continued to deliver his mail to the mailroom without postage, and each time the mail was returned to him because he was not entitled to free postage. (Exh. A.) Plaintiff has not explained why he was unable to mail his grievance to the Director's Level using the envelopes and minimum postage he was entitled to each week. Plaintiff also has not explained why he did not borrow postage to mail the appeal.[9] Based on this evidence, Plaintiff has not demonstrated that obstruction by prison staff prevented him from exhausting his remedies for this appeal. Therefore, with regard to Appeal log number SATF-E-05-0153, the Court finds that Plaintiff failed to exhaust remedies pursuant to 42 U.S.C. § 1997e.

**B.     October 11, 2005 Appeal**[10]

This appeal was submitted by Plaintiff to the Informal Level on October 11, 2005. (Exh. K.) The appeal concerned retaliation against Plaintiff by prison staff who allegedly confined Plaintiff in Ad-Seg under false pretenses pursuant to a hearing held on August 1, 2005. Id. In the appeal,

---

[9] Plaintiff's evidence indicates that he had the ability to borrow postage from other inmates. (Exh. A at 2 ¶8.)

[10] This appeal was never assigned a Log Number, because it was never accepted at any formal level of review.

Plaintiff claimed that "Warden D. G. Adams, acting-captain Lt. E. Smith, Lt. J. T. Tucker, and prison guard A. Larios conspired and acted together in subjecting me to retaliatory confinement in ad-seg on 8/1/05 under false pretenses after and because ... I lawfully exercised my constitutional rights to access the courts and petition for redress of grievances at CSATF." (Id. at 1.) Plaintiff also claimed that defendants retaliated against him when they refused to release him, refused to assign him an investigator, refused to allow him to identify witnesses, falsified a CDC form, and ordered him transferred to another prison. (Id. at 2.)

On October 18, 2005, the appeal was rejected at the Informal Level as untimely, and Plaintiff was advised that there had been too great a time lapse between when the action occurred and when he filed his appeal. (Id. at 5.) On December 11, 2005, Plaintiff re-submitted the appeal to the Informal Level, arguing that the appeal was rejected in error. (Id. at 6.) Plaintiff maintained that his appeal should have been accepted, even if untimely, because he was prevented from submitting the appeal earlier by prison staff who failed to provide him with the supporting documentation he needed to submit with the appeal. (Id.) On December 20, 2005, the appeal was again rejected as untimely, and Plaintiff was advised that he could either submit another explanation, or file a new appeal grieving his failure to receive the subject documentation. (Id. at 7.) On January 19, 2006, Plaintiff submitted the appeal to the Director's Level of review, claiming that prison staff had prevented him from completing the Second Level of review. (Id. at 8.) On April 15, 2006, the appeal was rejected at the Director's Level, advising Plaintiff that the form must be completed through the Second Level of review before submitting it to the Director's Level. (Id. at 11.) On or about April 26, 2006, Plaintiff sent a letter to the Secretary of the CDCR, requesting assistance to exhaust his appeal. (Id. at 12.) On August 1, 2006, Plaintiff's documents were returned to him, advising him again that he needed to complete the Second Level before proceeding to the Director's Level. (Id. at 13.)

Plaintiff claims that the appeals process was unavailable to him because prison staff refused to provide him with copies of the documents he needed to submit with the appeal, preventing him from meeting the fifteen-day deadline. Plaintiff claims that the documentation was not provided to him directly after the August 11, 2005 hearing, as required by regulations, and that he made several requests for copies of the documents, without result. Plaintiff maintains that he needed copies of

CDC Form 128-G documenting what had occurred at the August 11, 2005 hearing, to submit with the appeal, or the appeal would be rejected.

Defendants have not proven that Plaintiff did not exhaust the remedies that were made available to him for this appeal. Brown, 422 F.3d at 936-37 (which discusses the defendant's burden to prove that further administrative remedies are "available."); see also Ngo v. Woodford, 403 F.3d 620, 625 (9th Cir.2005) (recognizing that a prisoner satisfied the exhaustion requirement by showing his grievance had been rejected as untimely because he "could go no further in the prison's administrative system; no remedies remained available to him"). Defendants have not addressed Plaintiff's assertion that prison staff failed to give him documentation directly following the August 11, 2005 hearing, or his assertion that despite his requests, he was not provided documentation in time to file a timely appeal. In addition, Defendants have not provided any response to Plaintiff's contention that he was required to submit documentation with the appeal at the Informal Level, or his appeal would be rejected.[11] Therefore, with regard to this appeal, in which Plaintiff claims that he was retaliated against when he was confined in Ad-Seg under false pretenses pursuant to a hearing held on August 1, 2005, the Court finds that Plaintiff has exhausted his "available" remedies pursuant to 42 U.S.C. § 1997e.

## VI. CONCLUSION AND RECOMMENDATION

The Court finds that Defendants have not met their burden of raising and proving the absence of exhaustion with regard to all of Plaintiff's retaliation claims. Defendants have not proven that Plaintiff failed to exhaust remedies with regard to the claim that he was retaliated against when he was confined in Ad-Seg. However, Defendants have proven that Plaintiff failed to exhaust remedies with regard to his claims that he was retaliated against when defendants (1) denied him indigent correspondence supplies, (2) delayed his mail, (3) obstructed his outgoing mail, (4) denied him all but the May 2005 issue of his subscription of Prison Legal News, (5) issued a false disciplinary write-up against Plaintiff for having a clothesline inside his cell, (6) instructed CDCR personnel at SATF to limit Plaintiff to a sixty-minute non-contact visit with a visitor who had come over 250 miles to

---

[11] Cal. Code Regs, tit. 15 § 3084.3 provides, "[A]n appeal may be rejected [if T]he appeal is incomplete or necessary supporting documents are not attached."

12

see him, and (7) transferred Plaintiff to another prison.  Therefore, the Court shall recommend that Defendants' motion to dismiss be granted in part and denied in part.

Accordingly, for the reasons set forth herein, the Court HEREBY RECOMMENDS that:

1. Defendants' motion to dismiss for failure to exhaust, filed February 19, 2010, be GRANTED in part and DENIED in part;

2. Plaintiff's claims for retaliation based on allegations that defendants (1) denied him indigent correspondence supplies, (2) delayed his mail, (3) obstructed his outgoing mail, (4) denied him all but the May 2005 issue of his subscription of Prison Legal News, (5) issued a false disciplinary write-up against Plaintiff for having a clothesline inside his cell, (6) instructed CDCR personnel at SATF to limit Plaintiff to a sixty-minute non-contact visit with a visitor who had come over 250 miles to see him, and (7) transferred Plaintiff to another prison be DISMISSED from this action for Plaintiff's failure to exhaust remedies;

3. Plaintiff's claims for retaliation against defendants Adams, Pugliese, Motty, Guerrero, Meaders, Johnson, Cuevas, Sherman, Selvy, and Does 1-5 be DISMISSED from this action for Plaintiff's failure to exhaust remedies;

4. Defendants Adams, Meaders, Johnson, Cuevas, Sherman and Selvy be DISMISSED from this action for Plaintiff's failure to exhaust remedies with regard to the claims against them; and

5. This action now proceed against defendants Smith and Tucker for retaliation, based on Plaintiff's confinement in Ad-Seg under false pretenses; and against defendants Pugliese, Smith, Motty, Guerrero, and Does 1-5 for interfering with Plaintiff's right to send mail.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1).  Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     August 22, 2010            /s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE